Argued October 8, reversed and remanded November 12, 1919.

## NAFTZGER v. HENNEMAN.

(185 Pac. 233.)

**Appeal and Error—Findings of Fact on Conflicting Evidence Conclusive.**

1. A verdict in favor of plaintiff settles every contradicted fact in favor of plaintiff, and precludes any examination on appeal as to the weight of testimony.

**Frauds, Statute of—Sales of Personalty—Action for Price.**

2. If buyer, after inspecting onions in a bin, agreed to take them as they ran without sorting, and designated the place where

they were to be delivered and the agent to take them in charge at that place, they became at that moment defendant's property, and the statute of frauds does not apply in an action by the seller for the purchase price.

[As to when goods remaining in custody of seller as same third person deemed to have been recovered by buyer within exception to statute of frauds, see note in 4 A. L. R. 902.]

**Sales—Delivery.**

3. If buyer, after inspecting onions in a bin, agreed to take them as they ran without sorting, and designated the place where they were to be delivered and the agent to take them in charge at that place, and the onions were so delivered, they became at that moment defendant's property.

**Sales—Right to inspect.**

4. Where buyer inspected onions when he purchased them, he was not entitled to again inspect them, in the absence of a claim that seller attempted to deliver other onions.

**Sales—Action for Price—Instructions.**

5. In an action for the purchase price of onions, which defendant denied that he accepted, it would have been error to instruct that plaintiff could not recover, unless defendant promised to pay therefor the "specific sum of $674.40," as such instruction would require the jury to find for the defendant if it appeared upon the trial that the price agreed upon had been a dollar less or a dollar more than $674.40.

**Trial—Instruction Defective in Part Properly Refused.**

6. Where a requested instruction contains an erroneous proposition, the court is not bound to separate the chaff from the wheat, and give that part of the request which states the law correctly.

**Sales—Right to Inspect After Delivery.**

7. Where buyer of onions inspected them in a bin, and agreed to buy them in certain grades at certain prices, seller to deliver them sorted and graded, buyer was entitled, after delivery, to a reasonable time to inspect and ascertain whether the onions had been so sorted and graded.

**Sales—Failure by Seller of Performance.**

8. If seller failed to deliver sorted and graded onions, and that was the agreement, he failed to perform, and could not recover the purchase price, unless the onions as delivered were accepted by the buyer or his agent as performance.

**Sales—Action for Price—Unsubstantial Variance Will not Relieve Purchaser.**

9. A slight, unsubstantial variance in quality of onions contracted to be delivered would not relieve the purchaser from payment.

**Trial—Misleading Instructions.**

10. In action for purchase price of onions, where the evidence was in conflict as to the terms of the contract, delivery and accept-

ance, it was misleading to instruct as to substantial performance, slight or partial dereliction, and effect of delivery by seller of property to third person, etc.; there being no question of substantial performance, or partial dereliction, or intent of seller to repudiate or transfer the property to a third person.

**Sales—Tender of Goods—Compliance With Agreement.**

11. While tender of goods "entirely different" from those contracted for would justify a rescission, it would be erroneous to instruct a jury that a purchaser is not justified in refusing to perform his contract and pay for the goods tendered, unless they are "entirely different" from those contracted for.

**Appeal and Error—Sales—Misleading Instructions.**

12. In an action for purchase price of onions, an instruction likely to give a jury the impression that a purchaser was not justified in refusing to perform his contract and pay for goods tendered unless they were "entirely different" from those contracted for was misleading and prejudicial.

From Multnomah: Calvin U. Gantenbein, Judge.

Department 2.

This is an action to recover for the price of onions alleged to have been sold and delivered to defendant. The complaint alleges that on and between the 10th and 20th of December, 1917, the plaintiff, at the instance and request of defendant, sold and delivered to defendant certain goods, wares and merchandise, to wit, onions, of the value of $674, which sum defendant agreed and promised to pay.

The answer was (1) a general denial, (2) a plea of the statute of frauds, in that there was no note or memorandum of the transaction signed by defendant, as required by Section 808, L. O. L., and that defendant did not receive any part of the goods or pay any part of the purchase price therefor.

For a further defense defendant alleged:

"That on or about the 20th of October, 1917, defendant agreed with plaintiff that defendant would purchase from plaintiff all of his certain onions which would grade up to a certain standard, to-wit: that they should be of a certain size, known to the trade as

'medium,' and that they should be delivered to defendant within a reasonable time; that for all of·such onions so graded and delivered, defendant agreed to pay plaintiff at the rate of two cents (2c) per pound.

"That thereafter and on or about December 20, 1917, plaintiff informed defendant that he, the plaintiff, was ready to deliver said onions, but defendant on inspecting them, found them to be not of the grade specified, and to contain sprouts and decay, and thereupon notified plaintiff that he, the said defendant, would not accept said onions.

"That plaintiff has failed and neglected to deliver to defendant onions as specified and still refuses and neglects to do so."

By way of counterclaim defendant reiterated the allegations contained in the second separate defense, and further alleged that he had loaned plaintiff 334 sacks of the value of $50, in which to sack said onions; that he had demanded of plaintiff the return of said sacks or payment of their value, and that plaintiff had failed to pay for or return the sacks. There was a prayer for judgment for $50.

The new matter having been put at issue by appropriate denials, the case came on for trial before a jury. The plaintiff introduced evidence tending to show that the onions in question had been stored in bins, one above the other, and that previous to closing the sale the defendant had examined the onions and offered plaintiff $2.35 a sack for the onions, graded to one and one half inches in diameter and $1.50 a sack for the smaller ones; that plaintiff refused to sell the onions graded at that price, on the ground of inability to obtain help to do the grading, and offered to sell them "just as they ran," meaning without grading them, at two cents per pound. The offer also required that defendant should furnish the sacks. And it was

required by the defendant that the onions were to be delivered at the warehouse of the Oregon Electric Railroad Company at Waconda; that subsequently defendant called plaintiff up over the telephone and accepted his offer and sent the sacks, whereupon plaintiff sacked the onions, throwing out decayed and rotten ones, and took them to the Waconda warehouse and had them weighed and delivered the weight slips to Mr. Harris, who defendant admits was his agent. Harris, according to plaintiff's testimony, took the weight slips and told plaintiff that defendant would send him a check for the money when he received them. Two days after, according to Harris' testimony, he examined the onions and found them unsorted and containing rotten and spoiled onions and dirt, and so informed defendant, who thereupon refused to pay for them.

There was a sharp conflict of testimony in regard to the condition of the onions when sacked, defendant's testimony tending to show that they were in bad condition, sprouted and dirty, and plaintiff's testimony tending to show that they were sound and in fair condition, and fully complying with the terms of the contract, as stated by plaintiff. There was also a conflict as to the terms of the contract, defendant denying plaintiff's version of it and contending that the onions were to be sorted and graded, and that he was to pay $2 a sack for the best grade, which were to be at least one and three quarter inches in diameter, and that those of a smaller size were to go in a separate grade at $1.25 a sack.

There was a jury trial and a verdict and judgment for plaintiff, from which defendant appeals.

REVERSED AND REMANDED.

For appellant there was a brief over the names of
Mr. *Oglesby Young* and Mr. *John R. Turner,* with an
oral argument by Mr. *Young.*

For respondent there was a brief and an oral argu-
ment by Mr. *Walter C. Winslow.*

McBRIDE, C. J.—1. Were we sitting as triers of
the facts in this case, there would be ample room for
diversity of opinion as to the actual terms of the con-
tract between the parties; but the verdict of the jury
in favor of plaintiff settles every contradicted fact in
favor of plaintiff and precludes any examination as to
the weight of testimony, therefore, if the court's in-
struction properly stated the law, we must assume the
following facts to be settled: (1) That defendant ex-
amined the onions and made an offer, which was re-
fused by plaintiff; (2) that subsequently he accepted
plaintiff's offer to sell them as they run, i. e., without
grading or sorting, at $2 a sack, and furnished the
sacks and instructed plaintiff to deliver the onions in
sacks furnished by him, at a warehouse designated by
plaintiff at Waconda; that plaintiff did furnish the
identical onions theretofore inspected by plaintiff in
the sacks furnished by him at the warehouse desig-
nated by defendant and delivered the weight slips to
defendant's agent, who accepted the same without
question and told plaintiff that he would forward them
to plaintiff, who would send him a check for the amount
due.

2, 3. While, as before stated, these facts are dis-
puted by defendant's testimony, the verdict of the jury
makes them conclusive upon us, subject to the excep-
tion above mentioned, and we think they establish such
an inspection, acceptance and subsequent delivery as

takes the case out of the statute of frauds.   If defendant, after inspecting the onions in the bin, agreed to take them as they run without sorting and designated the place where they were to be delivered and the agent to take them in charge at that place, and the onions were so delivered, they became at that moment defendant's property, and if, before they were shipped to Portland they had greatly increased in price and plaintiff had taken them away, defendant could have maintained replevin to recover them or could have recovered damages for the unlawful taking.

4. Considering the testimony introduced by plaintiff as true—as we must after verdict—defendant had inspected the onions before delivery, and as it is not claimed that different onions were delivered at defendant's warehouse, he was not entitled to again inspect them.   In fact, plaintiff's testimony tends to show an acceptance by defendant's agent, which left nothing further to be done beyond the mere payment by defendant of the purchase price.   The motions for a nonsuit and a directed verdict were, therefore, properly overruled.

5, 6. Defendant assigns as error the refusal of the court to give the following requested instruction:

"But, on the other hand, if the plaintiff has failed to prove by preponderance of the evidence that the goods were delivered to and accepted by the defendant, and that the defendant promised to pay therefor the specific sum of $674.40, then your verdict.should be for the defendant, and the court instructs you that to constitute a delivery and acceptance within the meaning of the law, there must be some act on the part of the purchaser plainly recognizing the existence of the contract and that the property has been received in accordance thereof.   There must be a delivery of the goods by the seller with the intention of vesting

the right of possession in the buyer, and there must be an actual receiving and acceptance by the buyer with the intention of taking possession as owner."

The request in the main correctly states the law. The vice of it is the reference to the "specific sum of $674.40." If it had appeared upon the trial that the price agreed upon had been a dollar less or a dollar more than $674.40, the jury, had the court given the instruction as requested, would have been required to find for the defendant. This, of course, is not the law and where a requested instruction contains an erroneous proposition, the court is not bound to separate the chaff from the wheat and give that part of the request which states the law correctly.

Error is predicated upon the giving by the court of instructions 6 and 7, which are as follows:

"In this case the defendant seeks to avoid the sale, or contract for sale, upon the ground, as he contends, that the onions in question should have been delivered free from sprouts and decay, and of a certain size known to the trade as medium, and that no such delivery was made. You are instructed that if you find from the evidence in this case that there was a delivery and acceptance of the onions, that thereafter the defendant could not avoid the contract; that under these circumstances his only remedy would be to charge against the purchase price the amount of his damage caused by virtue of the fact that the onions delivered were not in accordance with the contract, if such were the case, and by giving you this instruction I do not mean to intimate that such was or was not the case, because that, of course, is a question of fact for you to determine from the evidence as you find it.

"As I have said, the defendant is attempting to avoid the contract of sale, and in reference to that matter you are instructed that the buyer may avoid the contract of sale when there has been a breach of the contract, or of a condition thereof, by the seller,

providing the breach is in some substantial particular which goes to the essence of the contract and renders the defaulting party incapable of performance, or makes it impossible for him to carry out the contract as intended.  Every slight or partial dereliction of one party will not entitle the other to abrogate the contract.  The conduct of the seller must be such as to show a disposition or intent to repudiate the obligation of the contract, as where the seller disposes of the property to a third person, delivers something entirely different from that intended to be delivered, or refuses to adhere to the original terms of the contract.''

7, 8.  To properly appraise the relevancy of these instructions, it will be necessary to consider the pleadings and evidence.  That a contract for the purchase of plaintiff's onions was negotiated between the parties is admitted both by the pleadings and the testimony.  Aside from the question of the statute of frauds, the controversy between the parties is not one where a contract of purchase is wholly denied, but goes to the terms of the contract, plaintiff claiming that defendant was to take the onions ''as they run,'' that is, in the condition in which he found them in the bins, plus sacking and delivery, and defendant, on the other hand, contending that they were to be sorted and graded before delivery.  There is no contention that the onions were not delivered at the place designated or within the time designated, the sole difference between the parties being in relation to the sorting and grading.  If the contract was, that plaintiff was to deliver to defendant onions sorted and graded, defendant was entitled, after delivery at the warehouse, to a reasonable time after such delivery to inspect and ascertain whether the onions had been so sorted and graded. On the other hand, if the transaction was as plaintiff states it, defendant was not entitled to a second in-

spection, in the absence of a pleading indicating that plaintiff had attempted to deliver to defendant other onions than those previously inspected by him, if such inspection was in fact made. If defendant contracted for onions graded and sorted, he was not bound to accept and pay for onions unsorted and ungraded. It is not a question as to the rescission of a contract, but of performance. If plaintiff failed to deliver sorted and graded onions, and that was the agreement, he failed to perform and cannot recover unless what he did place in the warehouse was accepted by defendant or his agent as performance.

9. Of course a slight unsubstantial variance in quality would not relieve the purchaser from payment, the rule being in many respects the same in cases where nonperformance is urged, as in cases where rescission is attempted.

10. We think instruction No. 7, above quoted, was erroneous as applied to this case. The testimony as to acceptance and inspection was conflicting. The testimony as to what was said and done by Harris, defendant's agent, at Brooks was conflicting; the jury had a right to find either way, both as to the terms of the contract, the delivery and the acceptance, and while the text of Cyc., which forms the body of the instruction, is correct, the incorporation therein of specific instances wherein a variation from the contract had been held substantial was calculated to mislead.

11, 12. To say to a jury that a purchaser is not justified in refusing to perform his contract and pay for the goods tendered unless they are "entirely different" from those contracted for, is not the law. While the tender of goods of that character would certainly justify a rescission, it does not follow that the variation must always go to that extent, and yet a jury

would be likely to get that impression from the language used. Onions unsorted and ungraded and mixed with dirt and refuse are not "entirely different" from good, clean, graded onions, but a party who contracts for the latter quality is not required to treat a tender of the former as a performance of the contract.

For this error, which is the only one occurring in the trial, but which seems to be substantial we feel ourselves compelled to reverse the case and direct a new trial, and it is so ordered.

REVERSED AND REMANDED.

BEAN, JOHNS and BENNETT, JJ., concur.